DAVIS WRIGHT TREMAINE LLP
 By:   Lacy H. Koonce, III (LK-8784)
1633 Broadway, 27th Floor
New York, New York 10019
(212) 489-8230
Attorneys for Anonymous Movant
 John Doe

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUL 01 2008   ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
IN RE RULE 45 SUBPOENA ISSUED TO      :
CABLEVISION SYSTEMS CORPORATION       :
REGARDING IP ADDRESS 69.120.35.31     :
:
-----------------------------------------------------------x

MISC 08 347

Civ. ___

ROSS, J.

### MEMORANDUM OF LAW IN SUPPORT OF JOHN DOE'S CONSOLIDATED (1) MOTION TO QUASH SUBPOENA DIRECTED TO CABLEVISION SYSTEMS CORPORATION; (2) MOTION FOR ATTORNEY'S FEES; AND (3) MOTION TO PROCEED ANONYMOUSLY

Non-party movant John Doe[1] respectfully submits this memorandum of law in support of his consolidated (1) motion filed pursuant to Fed. R. Civ. P. 45(c)(3) to quash the subpoena issued on June 6, 2008, by Prospect Capital Corporation ("Prospect") to Cablevision Systems Corporation ("Cablevision") in connection with *In re ESA Environmental Specialists, Inc.*, a bankruptcy action (docket # 07-31532) pending in the United States District Court for the Western District of North Carolina; (2) motion for attorney's fees pursuant to Fed. R. Civ. P. 45(c)(1); and (3) motion to proceed anonymously as a John Doe.

---

[1] For purposes of this motion, John Doe assumes an anonymous male identity.

## I. PRELIMINARY STATEMENT

John Doe is an Internet user whose computer is associated with the Internet Protocol ("IP") address 69.120.35.31.[2] Doe is a subscriber to Internet services provided by subpoenaed party Cablevision Systems Corporation. By seeking to reveal Doe's identity, the subpoena at issue, if complied with, will deprive John Doe of the right to engage in a variety of expressive activities, all of which are protected by multiple statutory and constitutional provisions, including the First Amendment and Section 631(c) of the Communications Act (47 U.S.C. § 551(c)).[3] Because the subpoena would eviscerate John Doe's right to speak anonymously, to receive information and to engage in other expressive activities on the Internet – itself a global "forum for individual expression," *Prometheus Radio Project v. FCC*, 373 F.3d 372, 439 (3d Cir. 2004) (Scirica, J., concurring and dissenting in part) – and because the subpoena does not seek (insofar as John Doe has been able to surmise from Prospect) any information materially relevant to a core claim or defense in the pending North Carolina litigation, the subpoena should be quashed. Moreover, because disclosure in this proceeding of John Doe's identity would deny him the very anonymity and freedom from harassment he seeks to protect, his motion to proceed anonymously likewise should be granted. Finally, because Prospect failed "to take reasonable steps to avoid imposing undue burden or expense" upon John Doe, Doe requests an award of attorney's fees pursuant to Fed. R. Civ. P. 45(c)(1).

---

[2] An IP address, in simple terms, is a unique address assigned to a specific electronic device that is connected to the Internet.

[3] The Communications Act prohibits cable service providers, such as Cablevision, from releasing identifying information regarding their subscribers except in narrowly defined circumstances. In terms of this subpoena, Cablevision is prohibited from releasing John Doe's identity without (1) giving Doe prior notice of the subpoena and (2) a court order requiring disclosure. 47 U.S.C. § 551(c).

## II. STATEMENT OF FACTS

On June 6, 2008, Prospect issued a subpoena in this Court for the name and address of the subscriber who accessed the Internet via Cablevision's service using the IP address 69.120.35.31 on March 14, 2008, at 11:50 a.m. Koonce Decl. Ex. A. John Doe, the subscriber whose computer is affiliated with that IP address, received notice of the subpoena from Cablevision on June 18, 2008. Koonce Decl. Ex. B. Cablevision has informed Doe that Cablevision will release the requested information if Doe does not take action to prevent its release on or before July 1, 2008. *Id.*

On June 23, Doe retained counsel, who contacted Prospect's counsel to make two requests: (1) a request for information about the basis for the subpoena; and (2) a short extension of time to respond to the subpoena. *See* Koonce Decl. Ex. C. Prospect's counsel refused both requests, other than informing Doe's counsel about the underlying bankruptcy action and stating vaguely that the subpoena was based on Prospect's belief that the IP address in question belonged to a user who had sent emails to participants in the bankruptcy litigation and had made unspecified "web postings." *Id.* When asked how Prospect acquired the IP address, counsel said he did not know and refused to explain in any more detail the basis for the subpoena unless Doe's counsel made a request for that information in writing. *Id.* Counsel indicated that the only urgency in the matter was an unspecified "statute of limitations issue." *Id.*

During the brief conversation with Doe's counsel, Prospect's counsel insisted that Prospect already knew the identity of the owner of the IP address in question.[4] *Id.* However, when Doe's counsel requested the presumptive owner's identity, Prospect's counsel refused to answer. *Id.* Instead, Prospect's counsel insisted that *Doe* provide information about his

---

[4] Of course, if Prospect knows the owner's identity, query why Prospect has not contacted the owner directly, rather than attempting to force Cablevision to answer the subpoena.

awareness of the parties in bankruptcy, Prospect and/or ESA Environmental Specialists, Inc. *Id.*

Subsequently, in an effort to assess whether the parties could resolve matters short of motion practice, Doe's counsel responded with a letter dated June 25, 2008 requesting more information. *Id.* Such requested information included, *inter alia*, information regarding the alleged emails originating from the IP address, information regarding the alleged web postings made from the IP address, and information substantiating any claim Prospect might have that the information sought is relevant to and needed for the underlying bankruptcy action. *Id.* Given the time constraints imposed by Prospect, Doe's counsel requested a response by the next afternoon (June 26).

Prospect answered this request by email. Rather than respond to any of Doe's requests and refusing to make any demonstration of relevance, counsel instead demanded again that Doe confirm whether or not he had heard of Prospect and/or ESA prior to receiving notice of the subpoena. Koonce Decl. Ex. D. If so, Prospect persisted in wanting to know Doe's identity. *Id.* In light of Prospect's refusal to even provide the barest of justifications for the subpoena, John Doe was left with no choice but to file the present motion to quash.

## III. APPLICABLE LEGAL STANDARDS

Rule 45 requires a district court to quash a subpoena where the subpoena will impose an "undue burden" if enforced. Fed. R. Civ. P. 45(c)(1). To determine whether a subpoena poses an undue burden, courts balance "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (quoting *United States v. IBM Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). The decision whether to quash a subpoena is committed to the discretion of the district court. *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir.

2003). A movant other than the recipient of a subpoena, such as John Doe here, has standing to move to quash the subpoena where he seeks to protect "personal rights," including rights protected by the First Amendment. *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990).

Where the identities of litigant subscribers to Internet services are sought to be disclosed by civil litigant-opponents, courts in this Circuit have announced a multi-factor test for balancing the litigants' interests in such disclosure against the First Amendment interests of the subscribers in protecting their anonymity. Such factors include (1) "a concrete showing of a prima facie claim of actionable harm," (2) "specificity of the discovery request," (3) "the absence of alternative means to obtain the subpoenaed information," (4) "a central need for the subpoenaed information to advance the claim," and (5) "the party's expectation of privacy." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004); *General Bd. of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, No. CV 06-3669, 2006 WL 3479332, at *4-*5 (E.D.N.Y. Nov. 30, 2006) (same, citing *Sony Music*).

Courts that have addressed the issue have found, however, that a higher showing is required where a litigant seeks via subpoena to reveal the identity of a non-party Internet user. In such cases, the subpoenaing party must demonstrate that: (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1097 (W.D. Wash. 2001).

## IV. ARGUMENT

**A.   The Subpoena Should Be Quashed Because Doe's Interest In Online Anonymity Far Exceeds Prospect's Interest In Doe's Identity.**

**1.   The Subpoena Seeks To Infringe John Doe's Protected Expressive Activities.**

John Doe's communications via the Internet, whether they be emails, web postings, or simple Internet browsing (or all of the above), are expressive activities protected for myriad reasons, and in myriad ways, by the First Amendment.[5]

First, and fundamentally, the Internet as a whole has been repeatedly recognized by the courts as a uniquely valuable forum for expression. The Supreme Court has held that the protections of the First Amendment extend fully to the Internet, where, "[t]hrough the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox," and "[t]hrough the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer." *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004) ("Courts have recognized the Internet as a valuable forum for robust exchange and debate."). And both Congress and the federal courts have recognized the importance of protecting the "unfettered and unregulated development of free speech on the Internet." *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) (discussing 47 U.S.C. § 230).

Second, anonymous speech has long been protected as a crucial prerogative and right. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (overturning state statute prohibiting distribution of anonymous campaign literature on First Amendment grounds and observing that "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent"); *see also Lamont v.*

---

[5] The issuance and enforcement of a subpoena constitutes state action subject to the constraints imposed by the First Amendment. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d at 1092.

*Postmaster General*, 381 U.S. 301, 307 (1965) (striking down a federal statute requiring citizens wishing to receive communist literature to affirmatively identify themselves to the post office because the lack of anonymity would have a "deterrent effect" and chill First Amendment rights to receive expressive materials). This right traces back to (and beyond) the birth of the republic, during which time anonymous pamphlets, circulars, newspaper columns and writings – including the Federalist Papers – provided essential contributions to the robust debate over the form the nation and its laws would take. *See McIntyre*, 514 U.S. at 341-42; *see also Talley v. California*, 362 U.S. 60, 64 (1960) ("Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind.").

Given this firmly-rooted pamphleteering tradition in American discourse, courts have had no trouble recognizing the extension of this tradition to the medium of the Internet, where anonymous speech "facilitates the rich, diverse, and far ranging exchange of ideas" that characterizes the online experience. *2TheMart.com*, 140 F. Supp. 2d at 1092. Online, the "ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate." *Columbia Ins. Co. v. Seescandy.Com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). Accordingly, "[p]eople who have committed no wrongdoing should be free to participate in online forums without fear that their identity will be exposed under the authority of the court," and "the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded." *2TheMart.com*, 140 F. Supp. 2d at 1092 (citing *Seescandy.Com*, 185 F.R.D. at 578), 1097; *id.* at 1093 ("The free exchange of ideas on the Internet is driven in large part by the ability of Internet users to communicate anonymously.").

Third, the First Amendment protects the right to distribute and the right to receive expressive materials – again, activities the Prospect subpoena apparently seeks to chill. *See Stanley v. Georgia,* 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas."); *Griswold v. Connecticut,* 381 U.S. 479, 482 (1965) (holding that freedom of speech and freedom of the press includes "the right to distribute, the right to receive, the right to read. . . and freedom of inquiry"); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 64-65 n.6 (1963) (holding that freedom of the press "embraces the circulation of books, as well as their publication"); *Martin v. City of Struthers,* 319 U.S. 141, 143 (1943) (holding that freedom of speech and press embraces and protects "the right to distribute literature" and "the right to receive it"). This right to receive and distribute information and ideas, "regardless of their social worth, is fundamental to our free society." *Stanley,* 394 U.S. at 564 (citing *Winters v. New York,* 333 U.S. 507, 510 (1948)).[6]

All of these protections would be eviscerated if the disclosure of Doe's identity were forced by the mere issuance of a – here, utterly bare – subpoena.

### 2. Subpoenas Seeking To Deprive Internet Users Of Anonymity Are Subject To Heightened Judicial Scrutiny.

For all of these reasons, courts have uniformly concluded that the anonymity of Internet users receives heightened constitutional protection. *See, e.g., 2TheMart.com,* 140 F. Supp. 2d at 1093 (quashing subpoena and stating "discovery requests seeking to identify anonymous Internet

---

[6] Relatedly, in a decision in a long-running litigation over the Child Online Protection Act, the U.S. District Court for the Eastern District of Pennsylvania recently took note of Internet users' privacy concerns about (and constitutional concerns arising from) the release of web surfing data, stating as a finding of fact that "Web users are especially unlikely to provide a credit card or personal information to gain access to sensitive, personal, controversial, or stigmatized content on the Web. As a result of this desire to remain anonymous, many users who are not willing to access information non-anonymously will be deterred from accessing the desired information." *ACLU v. Gonzales,* 478 F. Supp. 2d 775, 805-06 (E.D. Pa. 2007); *see also id.* at 812 (forcing users who seek access to online content to reveal their identities online "will chill speech").

users must be subjected to careful scrutiny by the courts"); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005) (setting forth a summary judgment test for a civil subpoena seeking identity of anonymous internet poster/defendant); *Best Western Int'l, Inc. v. Doe*, No. CV-06-1537, 2006 WL 2091695 (D. Ariz. July 25, 2006) (civil subpoena seeking identity of anonymous internet posters cannot go forward against anonymous defendants until plaintiff essentially proves he can survive summary judgment); *Highfields Capital Mgmt. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) (quashing subpoena seeking identity of Internet poster/defendant); *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) (denying plaintiff's motion to compel an Internet service provider to reveal the identity of an anonymous internet speaker/defendant).

Most commonly, the question of online anonymity arises in the context of plaintiffs seeking to identify anonymous <u>defendants</u>, and the courts have required a substantial showing – most commonly one sufficient to defeat summary judgment – before allowing such defendants' identities to be disclosed. In *Best Western*, for example, the district court required the would-be plaintiff to survive summary judgment because the acts at issue – anonymous Internet postings by the defendants on the Internet – were "purely expressive" and thus "entitled to substantial First Amendment protection." *Best Western*, 2006 WL 2091695, at *4. Similarly, in *In re Does 1-10*, 242 S.W.3d 805 (Tex. App. 2007), the Texas Court of Appeals, after reviewing the question at length, imposed a summary judgment standard on the ground that, *inter alia*, a meaningful examination of evidence is necessary before a court can conclude "that a defendant's constitutional rights must surrender to a plaintiff's discovery needs." *Id.* at 822 (quoting *Best Western*, 2006 WL 2091695, at *5). Finally, in *Cahill*, the Delaware Supreme Court required a would-be plaintiff to survive summary judgment in order to unmask an anonymous defendant, observing that such a requirement would protect the defendant's rights without imposing a

significant burden on the plaintiff (who controlled or had access to much of the relevant information in suit, in any event). *Cahill*, 884 A.2d at 462-64.[7]

As noted, *supra*, other courts, including courts in this Circuit, have applied a multi-factor test when faced with requests to identify anonymous parties to the underlying litigation, assessing (1) "a concrete showing of a prima facie claim of actionable harm," (2) "specificity of the discovery request," (3) "the absence of alternative means to obtain the subpoenaed information," (4) "a central need for the subpoenaed information to advance the claim," and (5) "the party's expectation of privacy." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004); *General Bd. of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, No. CV 06-3669, 2006 WL 3479332, at *4-*5 (E.D.N.Y. Nov. 30, 2006) (same, citing *Sony Music*).

Courts addressing circumstances identical to the one presented here have recognized, however, an even more stringent standard should be applied in cases where a litigant seeks to reveal the identity of a *non-party* through the use of a Rule 45 subpoena. As the district court in *2TheMart.com* observed, unlike a party's identity, the identity of a non-party witness generally is not crucial to the litigation. 140 F. Supp. 2d at 1095. Accordingly, "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id.* The court therefore

---

[7] The *Cahill* court also noted its concern that plaintiffs often resort to litigation for the unstated purpose of identifying their critics, decrying the "sue first, ask questions later" approach to filing civil complaints. *Cahill*, 884 A.2d at 457 (a lesser standard "will discourage debate on important issues of public concern as more and more anonymous posters censor their online statements in response to the likelihood of being unmasked"). When subpoenas are used to silence or to "out" litigants' critics, rather than for any legitimate litigation-related purpose, they give rise to the same concern.

adopted the following standard for assessing a civil subpoena seeking to identify an anonymous non-party Internet user:

> In order to enforce a civil subpoena seeking the identifying information of a non-party individual who has communicated anonymously over the Internet, the party seeking the information must demonstrate, by a clear showing on the record, that four requirements are met:
>
>> (1) the subpoena seeking the information was issued in good faith and not for any improper purpose,
>>
>> (2) the information sought relates to a core claim or defense,
>>
>> (3) the identifying information is directly and materially relevant to that claim or defense, and
>>
>> (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*Id.* at 1097.[8] Such a heightened burden is necessary because "the First Amendment requires us to be vigilant in making [these] judgments, to guard against undue hindrances to political conversations and the exchange of ideas." *Id.* at 1095 (quoting *Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 192 (1999). At a minimum, this standard should set a floor on the showing required of Prospect here.

### 3. Prospect Cannot Satisfy Any Rational Test For Justifying Disclosure Of John Doe's Identity.

Regardless of the test employed, Prospect has failed to justify, by any measure, its effort to force Doe's identity into the open. In its perfunctory interactions with Doe's counsel, Prospect has made no showing whatsoever that Doe's identity is at all relevant to the underlying litigation in North Carolina – let alone a showing that Doe's identity relates to a "core claim or

---

[8] This standard, which refers generically to Internet "communications," applies to Doe's Internet activities on March 14, 2008, regardless of whether such activities included "web postings," emails, web surfing or all of the above. *Id.*; *see also McIntyre*, 514 U.S. at 357; *Stanley*, 394 U.S. at 564; *Griswold*, 381 U.S. at 482; *Bantam Books*, 372 U.S. at 64-65 n.6; *Martin*, 319 U.S. at 143.

defense" in that litigation or that "the identifying information is directly and materially relevant to that claim or defense." *See* Koonce Decl. Exs. C, D; *2TheMart.com*, 140 F. Supp. 2d at 1097; *Sony Music*, 326 F. Supp. 2d at 565 (requiring a "central need" for the information). Instead, Prospect has attempted to hide the ball, insisting that *Doe* provide information regarding the subpoena and its relevance to the underlying case.[9] Indeed, Prospect has failed to identify *any* purpose for issuing the subpoena, raising substantial questions about whether the subpoena was "issued in good faith and not for any improper purpose." Koonce Decl. Exs. C, D; *2TheMart.com*, 140 F. Supp. 2d at 1097. And, similarly, Prospect has made no indication of any efforts to obtain Doe's identity via other means, except to suggest that Prospect actually already knows who Doe is – a strange basis, indeed, for issuing a subpoena. *Id.*; *Sony Music*, 326 F. Supp. 2d at 565 (requiring a showing of "the absence of alternative means to obtain the subpoenaed information"). In short, Prospect has done nothing to justify its decision, has made no effort to seek for other means to pursue its aims without violating Doe's First Amendment rights, and has utterly failed to establish even the slightest hint of a connection between John Doe and the North Carolina bankruptcy litigation – let alone a connection warranting depriving Doe of his right to remain anonymous while using the Internet.[10] This is hardly the "exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights

---

[9] While the burden is Doe's to show an undue burden arising from the subpoena, where, as here, "relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter,* 211 F.R.D. 658, 663 (D. Kan. 2003) ("Demonstrating relevance is the burden of the party seeking discovery.").

[10] Any disclosure of Doe's identity would, by definition, deprive him of his First Amendment right to communicate anonymously via the Internet, whether that communication is by distributing and receiving expressive content, by sending and receiving emails, or by making "web postings." *Best Western*, 2006 WL 2091695, at *4; Koonce Decl. Ex. C.

of the anonymous speaker." *2TheMart.com*, 140 F. Supp. 2d at 1095; *Sony Music*, 326 F. Supp. 2d at 565. The subpoena, therefore, should be quashed.[11]

**B.  Prospect Failed To Take Reasonable Steps To Avoid Imposing Undue Burdens And Expenses Upon John Doe, And Doe Is Therefore Entitled To An Award Of Attorney's Fees.**

Prospect's failure to provide even the slightest justification for the subpoena warrants an award of fees to John Doe. Fed. R. Civ. P. 45(c)(1) provides that, where an issuing party fails "to take reasonable steps to avoid imposing undue burden or expense" upon persons subject to a subpoena, the issuing court "must enforce" the duty to take such steps and must "impose an appropriate sanction," including, in the court's discretion, attorney's fees. *Id.*

Here, had Prospect made even the barest effort to demonstrate that the subpoena sought relevant information or was otherwise reasonable, perhaps John Doe's motion to quash could have been avoided. Prospect opted, however, to offer Doe nothing of substance and to force Doe to file this motion if he wished to preserve his constitutional rights. Indeed, if counsel's representation that Prospect does not even need the subpoena to be enforced in order to identify Doe in the first place is accurate, then the subpoena – and this motion – was a worthless exercise in futility. In such circumstances, Prospect cannot possibly be deemed to have taken "reasonable steps" to avoid unnecessary or undue burdens and expenses upon John Doe. Quite the opposite. Accordingly, Doe should be compensated for the attorney's fees expended in this matter.

**C.  John Doe Is Entitled To Proceed Anonymously.**

Finally, because the only means by which to preserve the rights he seeks to vindicate via his motion to quash is to file this motion without identifying himself by name, John Doe respectfully requests leave of this Court to proceed anonymously in this action. *See Best*

---

[11] Should Prospect, however belatedly, provide in opposition to Doe's present motions substantive information regarding its decision to issue the subpoena, Doe will respond to that information on reply.

*Western*, 2006 WL 2091695, at *5.

## V. CONCLUSION

For the foregoing reasons, anonymous movant John Doe respectfully requests that the Court (1) grant his motion to quash Prospect's subpoena, (2) issue an award of attorney's fees in favor of Doe, (3) grant Doe leave to proceed anonymously, and (4) provide such further relief as the Court may deem appropriate.

Dated: New York, New York
July 1, 2008

                         Davis Wright Tremaine LLP

                         /s/ Lacy H. Koonce, III
                         Lacy H. Koonce, III (LK-8784)

                         1633 Broadway, 27th Floor
                         New York, New York 10019
                         (212) 489-8230

                         Attorneys for Anonymous Movant John Doe