UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

IN RE RULE 45 SUBPOENA ISSUED TO          REPORT AND
CABLEVISION SYSTEMS CORPORATION           RECOMMENDATION
REGARDING IP ADDRESS 69.120.35.31         MISC 08-347(ARR)(MDG)

- - - - - - - - - - - - - - - - - X


     This matter concerns a subpoena issued by Prospect Capital

Corporation ("Prospect"), a creditor involved in a bankruptcy

proceeding commenced by ESA Environmental Specialists, Inc.

("ESA") in the Western District of North Carolina.  The Honorable

Allyne Ross has referred to me three motions of John Doe ("Doe"):

(1) motion to quash a subpoena issued by Prospect to Cablevision

Systems Corporation ("Cablevision"); (2) motion for attorneys'

fees under Rule 45(c)(1) of the Federal Rules of Civil Procedure;

and (3) motion for leave to proceed anonymously in this action.

See ct. doc. 6.

     For the following reasons, I respectfully recommend that all

three motions be granted.[1]

_____

     [1] Although applications to compel or quash subpoenas are
ordinarily viewed as pretrial discovery matters within the
general pretrial reference authority of magistrate judges
pursuant to 28 U.S.C. § 636(b)(1)(A), motions to quash a subpoena
brought in a proceeding before a court other than the one
determining the action are typically treated as dispositive
matters under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil
Procedure 72(b).  See NLRB v. Serv. Employees Intern. Union Local
521, No. C-07-80170MISC-JF, 2008 WL 152176, at *1 n.1 (N.D. Cal.
Jan. 16, 2008) (finding motion to enforce administrative subpoena
a dispositve matter under 28 U.S.C. § 636(b)(1)(B)); In re
Administrative Subpoena Blue Cross Blue Shield of Mass., Inc.,
400 F. Supp. 2d 386, 288-89 (D. Mass. 2005) (motion to quash an
                                              (continued...)

BACKGROUND

The following facts are undisputed, unless otherwise noted.

Bankruptcy Proceeding

As part of the hotly contested underlying bankruptcy action, ESA sought to sell its assets to Prospect, a creditor which, at one time, had loaned ESA approximately $12 million.  In the course of the bankruptcy, Prospect attempted to acquire some assets in the sale, including various "litigation rights" owned by ESA,[2] which ultimately culminated in the conversion of the bankruptcy action to a Chapter 7 proceeding.  Prospect claims conversion was necessary to preserve the viability of some of the claims arising under the litigation rights it had acquired from ESA.  Prospect Opp'n 5.

After conversion, the Bankruptcy Court judge appointed a "Chapter 7 trustee" (id.) to liquidate ESA's estate.[3]  In

_____

[1](...continued)
administrative subpoena a dispositive matter subject to de novo review under 28 U.S.C. § 636(b)(1)(B)); NLRB v. Cable Car Advertisers, Inc., 319 F. Supp. 2d 991, 995-96 (N.D. Cal. 2004) (same); Strong v. United States, 57 F. Supp. 2d 908, 910-14 (N.D. Cal. 1999) (consideration of petition to quash IRS summonses a dispositive matter under 28 U.S.C. § 636(b)(1)(B)).  Thus, even though the motions are referred to me for decision, (ct. doc. 6), I am setting forth my findings as a report and recommendation. Any objections may be subject to de novo review.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1)-(3).

[2] Prospect claims that the prosecution of these litigation rights, which include potential "claims against the former directors and officers of ESA for wrongdoing," and "the right to pursue all preference and fraudulent conveyance claims," are "key to . . . mitigating its losses."  Prospect Mem. in Opp'n to Doe's Mot. ("Prospect Opp'n") (ct. doc. 5) 5.

[3]Among its numerous duties, a bankruptcy trustee is
(continued...)

negotiations with Burt Shuford, counsel for the trustee, Prospect
sought, as part of any liquidation scheme, the release of
Prospect from any potential "lender liability claims" that may be
filed against it.  Before acceding to this term, the trustee
investigated the viability of any potential lender liability
claims -- an effort that included interviewing past and present
officers and directors of ESA.  Prospect claims that during the
investigation, ESA personnel told the trustee of various
transgressions, including fraudulent acts, that were committed by
Prospect.  Prospect argues that these negative allegations by ESA
have undermined its efforts to secure the trustee's acceptance of
its condition regarding the release of potential lender liability
claims, which, in turn, would affect its ability to pursue the
litigation rights it had acquired from ESA in the asset sale.

Believing that its ability to secure a positive result in
the bankruptcy proceeding has been undermined by negative
information spread by current and former ESA employees, Prospect
has launched what it calls a "credibility battle" against ESA, in
an attempt to "prove that the poisonous accusations against
Prospect originated with one or more disgruntled employees,
officers or directors of Prospect, and therefore are tainted,
inaccurate and biased."  Prospect Opp'n 13.  Prospect believes

---

[3](...continued)
obligated by statute to "collect and reduce to money the property
of the estate for which such trustee serves, and close such
estate as expeditiously as is compatible with the best interests
of the parties in interest" and to "investigate the financial
affairs of the debtor."  11 U.S.C. § 704(a)(1), (4).

John Doe, the individual for whom it seeks identifying

information, is a former disgruntled employee.

John Doe's Internet Activities

    John Doe has posted a number of messages on Internet message

boards devoted to discussions about specific publicly traded

stocks, including Prospect.  Beginning in November 2006, Doe

posted numerous messages on a message board hosted by Yahoo!, an

internet portal company,[4] mostly under the user name

"free3warren."[5]  These messages were often critical of Prospect

and its current and former employees, including John Barry,

Prospect's chief executive officer.  The following are examples

of posts by John Doe on the Prospect message board:

        In the spring of 2004, two failed venture capitalists,
        John Barry and Grier Elisek, gave up their goal of
        raising money to fund their proposed limited
        partnership.  The simple problem was that after every
        potential investor did their due diligence on John,
        they ran away as fast as they could.
        [. . .]
        I've talked to a number of people who had involvement
        with Barry over the years, and the common theme is
        always, 'take my advice and don't get involved with
        him.'  My guess is that the body of people who share

_____

    [4]As described on the website itself, "Yahoo! Message Boards
allows you to find and engage in discussions across thousands of
subjects, and are a great place to debate issues, find advice,
share your knowledge, and meet friends."  Getting Started -
Yahoo! Message Boards Help,
http://help.yahoo.com/l/us/yahoo/messages/basics/messages-01.html
(last visited September 3, 2008).

    [5]While the parties seem to be in dispute as to how many user
names Doe had actually employed, they at least agree that he had
posted on the Prospect message board using one other user name:
"wiseone718."  Doe Reply Mem. (ct. doc. 7) 5; see also Email from
counsel for Doe to counsel for Prospect (May 29, 2008), attached
to Schueller Decl. as Ex. EE (ct. doc. 3-8).

that opinion has only become large [sic] these last few
years.

February 21, 2008 posting of free3warren to

http://messages.finance.yahoo.com/mb/PSEC, attached as Ex. Q to

Schueller Decl. (ct. doc. 3-6).

I was rummaging around in [Prospect's] 2006 10K and
found the following list of employees:

Belzer, de Bie, Hopley, Flores, Klaussman, Hull,
Meskhi, and Brand.  Other than the first three, the
rest are gone.  Flores and Klaussman left in the last
year, but Hill, Brand, and Meskhi are new names to be
added to the list of obviously incompetent employees
that Barry had to get rid of.

March 7, 2008 posting of free3warren to

http://messages.finance.yahoo.com/mb/PSEC, attached as Ex. P to

Schueller Decl. (ct. doc. 3-6).

I attended an investor conference sponsored by a
regional investment bank and got to talking with a
banker who shed some light on the early days of
[Prospect].
He described the first year of [Prospect's] operations
as a 'train wreck.'
. . .
Just more anecdotal evidence that suggests Barry has
always been controversial, and no one should be
surprised that this board has attracted the number of
interesting posters that it has.

March 14, 2009 posting of free3warren to

http://messages.finance.yahoo.com/mb/PSEC, attached as Ex. N to

Schueller Decl. (ct. doc. 3-6).

Prospect points to one instance in which Doe posted messages

under the same discussion topic on the Prospect message board

under two different user names, thus giving the appearance that a

discussion was taking place between two different people.  In

that post, Doe, using the name wiseone718, encouraged his fellow

posters with "real evidence that the management of [Prospect had] made sworn statements in court that conflict with what the shareholders may have been told," to disclose such evidence to Prospect's "independent directors."  December 7, 2007 posting of wiseone718 http://messages.finance.yahoo.com/mb/PSEC), attached as Ex. J to Schueller Decl. (ct. doc. 3-5).  Nine minutes after that post, Doe, under free3warren, wrote, "Well stated.  I wish I had thought to post this."  Id.

Posting and Email by citykidd

On March 18, 2008, an "agent of Prospect" (Becker Aff. ¶ 3) (ct. doc. 3-2), with the user name citykidd, posted the following message on the Prospect message board:

> Attention Seriousone, Wiseone, Ephfields, Retired, Warren as well as others.
>
> I have been reading this post off and on for the past few weeks, and I am not surprised at the level of activity here.  In addition to the Rabo information that has already been posted, I think I can provide some further insight that you guys may find valuable. I prefer not to post it here as I don't want to draw any attention of lil' drawstring and her master.  I will email it to select group of you.  The Truth is heavy, therefore few care to carry it.

March 13, 2008 posting of citykidd to http://messages.finance.yahoo.com/mb/PSEC, attached as Ex. T to Schueller Decl. (ct. doc. 3-6).  A discussion then ensued among other posters on the Prospect message board, including Doe, which, in sum and substance, sought, however cautiously,[6] to

---

[6] Doe, under the user name free3warren, responded in a post that he did not "do sidebars" and was not interested in seeing citykidd's information if it was material non-public information,
(continued...)

encourage citykidd to disclose whatever information it had by posting it on the Prospect message board.  The day after its initial post, citykidd sent emails to several Prospect message board posters, which, again, included Doe.  Instead of containing the information referred to in the post, however, the email contained an internet link which, when clicked on, would relay the internet protocol ("IP") address[7] of the computer that had accessed it to "Prospect's agent."  Becker Aff. ¶ 4.  That same day, Doe opened citykidd's email and clicked on the link, causing his IP address to be forwarded to Prospect.

Subpoenas to Yahoo!

On April 16, 2008, approximately one month after it had received Doe's IP address, Prospect issued a subpoena to Yahoo! in the Northern District of California under the auspices of the pending bankruptcy action.  The subpoena sought user information, including names and places of residence, of several posters to the Prospect message board, including free3warren, Doe's alias. After being notified by Yahoo! of the subpoena, Doe retained

_____

[6](...continued)
which would have been barred from disclosure under the securities laws.  March 13, 2008 posting of free3warren to
http://messages.finance.yahoo.com/mb/PSEC, attached to Schueller Decl. Ex. T.

   [7]  An internet protocol address is a numerical identifier assigned to an internet subscriber by that subscriber's internet service provider.  Pac. Bell Internet Servs. v. Recording Indus. of Am., Inc., No. C03-3560 SI, 2003 WL 22862662, at *2 n.3 (N.D. Cal. Nov. 26, 2003).

counsel[8] who sought to resolve the matter informally by negotiating with counsel for Prospect.  Doe's counsel offered to state in a sworn statement that he was not affiliated with ESA currently or as a former employee and that he had no connection to the pending bankruptcy action in North Carolina.  Despite substantial progress in the negotiation, the parties ultimately failed to reach an agreement and Doe moved to quash the subpoena.  See Mot. to Quash Subpoena, In re: ESA Envtl. Specialists, Inc., No. 3:08-mc-80115 (N.D. Cal. Jul. 18, 2008), attached to Schueller Decl. Ex. G (ct. doc. 3-4).  Doe's motion to quash was granted by default.  See ct. doc. 29 in 3:08-mc-80115-S.

On May 22, 2008, Prospect issued another subpoena to Yahoo! seeking similar user information for four additional posters, including wiseone718, a name which Doe had also used.  After the issuance of that subpoena, counsel for Doe, in the context of correcting an earlier assertion that Doe had used only one user name, informed counsel for Prospect that Doe had indeed posted on the Prospect message board as wiseone718, in addition to free3warren.  She then reiterated her intention to oppose the second subpoena on the same grounds upon which she had sought to quash the first subpoena.[9]

_____

[8] Aparna Rajagopal-Durbin of Downey Brand was counsel for Doe during the proceedings in California involving the Yahoo! subpoenas.  Doe is represented in these proceedings by Lacy H. Koonce, III of Davis Wright Tremaine LLP.

[9] The parties have not provided further information whether Doe filed a motion in response to the second subpoena.

Subpoena to Cablevision

On June 6, 2008, Prospect issued the subpoena in dispute herein to Cablevision, Doe's internet service provider.  In the subpoena, Prospect seeks "the name and address of the Optonline User for March 14, 2008 at 11:50 AM."  The subpoena defined "Optonline User" as "any person . . . who . . . has the IP Address 69.120.35.31 and who used Optonline.net as an internet service provider."[10]  The IP address of 69.120.35.31, which refers to Doe's internet connection, had been obtained by Prospect in the email scheme it orchestrated in March 2008 with the user name citykidd.

Doe first received notice from Cablevision of the subpoena on June 18, 2008.  On June 23, 2008, Doe retained new counsel in New York, who again attempted to resolve the matter with Prospect.  Negotiations between counsel quickly faltered and Doe filed the present motion on July 1, 2008. In moving to quash the subpoena, Doe argues that disclosure of the information sought in the subpoena will violate his First Amendment right to engage in anonymous speech.  Besides disputing this contention, Prospect argues that Doe has no standing to challenge the validity of the subpoena because Cablevision, not Doe, was the recipient of the subpoena.

---

[10]Optonline stands for Optimum Online and is a high-speed internet service offered by Cablevision.  Cablevision Corporation Information, http://www.cablevision.com/about/index.jsp (last visited Sept. 4, 2008).

DISCUSSION

I.   Standing and Timing of Objections

     Rule 45 of the Federal Rules of Civil Procedure, which
governs the issuance of subpoenas, provides that "[o]n timely
motion, the issuing court must quash or modify the subpoena that
... requires disclosure of privileged or other protected matter,
if no exception or waiver applies." Fed. R. Civ. P.
45(c)(3)(A)(iii) (2008).   The movant bears the burden of
persuasion in a motion to quash.  Genal Strap, Inc. v. Dar, No.
CV2004-1691(SJ)(MDG), 2006 WL 525794, at *1 (E.D.N.Y. Mar. 3,
2006) (quoting Jones v. Hirschfeld, 219 F.R.D. 71, 74-75
(S.D.N.Y. 2003)) (additional citation omitted).

     Rule 45 provides that "a person commanded to produce
[documents] may ... serve ... a written objection to inspecting
... any or all of the designated materials ..."  Fed. R. Civ. P.
45(c)(2)(B).  A plain reading of this provision would suggest
that only a person to whom the subpoena is issued may seek to
quash the subpoena.  See Fonovisa, Inc. v. Does 1-9, No. 07-1515,
2008 WL 919701, at *7 (W.D. Pa. Apr. 3, 2008) (noting that "all
of the bases for quashing a subpoena under Rule 45(c)(3)(A)
appear to be directed to the entity upon whom the subpoena was
served").  As the Second Circuit has noted, "a party usually does
not have standing to object to a subpoena directed to a non-party
witness." Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126
(2d Cir. 1975) (citation omitted).  Although courts have not, as
a general matter, recognized the right of non-parties to quash a

subpoena issued to another non-party, courts have found non-party
standing because of "the nature of the information sought."  See
First Indem. of Am. Ins. Co. v. Shinas, No. 03 Civ. 6634, 2005 WL
3535069, at *3 (S.D.N.Y. Dec. 23, 2005).  Standing may be found
when the movant asserts a "claim of privilege," Langford, 513
F.2d at 1126; "has a sufficient privacy interest in the
confidentiality of the records sought," ADL, LLC v. Tirakian, No.
CV 2006-5076(SJF)(MDG), 2007 WL 1834517, at *2 (E.D.N.Y. June 26,
2007); or seeks to protect "a proprietary interest in the
subpoenaed matter," United States v. Nachamie, 91 F. Supp. 2d
552, 558 (S.D.N.Y. 2000).  See also Ariaz-Zeballos v Tan, No. 06
Civ. 1268, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007)
(standing found to quash subpoena issued to non-party banks based
on movant's "privacy interest in [his] financial affairs")
(citations omitted); Ungar v. Palestinian Auth., 400 F. Supp. 2d
541, 553 (S.D.N.Y. 2005) (standing to quash subpoena where there
was an "excessive number of documents requested, the unlikelihood
of obtaining relevant information, and the existence of attorney-
client privilege for all documents").

     Although not the recipient of Prospect's subpoena, Doe
clearly has a sufficiently significant interest in the
information covered by that subpoena to have standing.  On the
most fundamental level, the information sought directly concerns
Doe -- that is, his identity and whereabouts.  The subpoenaed
information, and its potential disclosure, at the very least
affect Doe's right to engage in anonymous speech, which, as

discussed below, is accorded some protection under the First Amendment, irrespective of the strength of Doe's First Amendment claim.  Doe also has a privacy interest in maintaining the confidentiality of his identity and whereabouts as a customer of Cablevision, his internet service provider.  This interest, differs little, in substance, from that of a bank customer who seeks to shield his or her financial affairs from public scrutiny; they both arise from the movant's relationship with an entity and service for which expectations of privacy run high.  Accordingly, Doe has standing to quash the subpoena issued to Cablevision.

Prospect also argues that Doe waived his opportunity to challenge the subpoena because he failed to abide by the filing deadline specified by Rule 45(c)(2)(B).  That Rule requires a litigant opposing a subpoena to object "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(c)(2)(B) (2008).  Although courts will ordinarily treat the failure to make timely objections as a waiver of objections, courts have excused untimely Rule 45 challenges "in unusual circumstances and for good cause."  Semtek Intern., Inc. v. Merkuriy Ltd., No. 3607 DRH, 1996 WL 238538, at *2 (N.D.N.Y. May, 1, 1996) (citation omitted).

Because the subpoena Prospect issued on June 6, 2008 directed Cablevision to produce the requested information by June 13, 2008, Prospect argues that Doe should have objected before June 13th in order to comply with Rule 45(c)(2)(B).  Assuming

-12-

that Prospect also served Cablevision on June 6, 2008, the time
between service and compliance was seven calendar days or five
business days.[11]  Doe responds that he is not bound by the time
frame specified in Rule 45(c)(2)(B), because that requirement
applies only to the party to whom the subpoena was issued, which
is Cablevision.

I need not address the issue as to when Doe should have
objected because I find the time provided for complying with the
subpoena and hence, raising a challenge, to be insufficient.
Rule 45(c)(3)(A)(i) provides that "the issuing court must quash"
a subpoena that "fails to allow a reasonable time to comply."
Although Rule 45 does not define "reasonable time," many courts
have found fourteen days from the date of service as
presumptively reasonable in light of the language of Rule
45(c)(2)(B).  See, e.g., In re Rule 45 Subpoena to Fidelity Nat'l
Info. Servs., Inc., No. 3:09-mc-29-J-25TEM, 2009 WL 4899399, at
*1 (M.D. Fla. Dec. 11, 2009) (citing McClendon v. TelOhio Credit
Union, Inc., No. 2:05-CV-1160, 2006 WL 2380601 (S.D. Oh. Aug. 14,
2006)); Biological Processors of Alabama, Inc. v. North Georgia
Environmental Services, Inc., Mis. Action No. 09-3673, 2009 WL
2160984, *3 (E.D. La. July 15, 2009) (citing cases); Tutor-Saliba
Corp. v. U.S., 30 Fed. Cl. 155, 156-57 (Fed. Cl. 1993); cf. Mann
v. University of Cincinnati, 114 F.3d 1188 (Table), 1997 WL
280188, at *5 n. 5 (6th Cir. 1997) (approving magistrate judge's

---

[11]   Neither Doe nor Prospect has supplied the date the
subpoena was actually served on Cablevision.

finding that fourteen days' notice is reasonable) (dicta).   In
fact, one of the reasons that Rule 45(c)(1)(A) was amended in
1991 was to lengthen the time to object from ten days to
fourteen.  See Fed. R. Civ. P. 45 advisory committee's note.

Since Doe had objected to the earlier subpoenas on Yahoo!,
Prospect should have expected that Doe was likely also to object
to the subpoena on Cablevision.  Yet Prospect issued a subpoena
requiring compliance in fewer than fourteen days and has not
shown that it provided notice to Doe within fourteen days of
service or the shorter 7 day period for compliance.  Under these
circumstances, Prospect clearly failed to comply with Rule
45(c)(1)(A)(I) and provide reasonable time for compliance.  See
Memorial Hospice, Inc. v. Norris, No. 2:08-CV-084-B-A, 2008 WL
4844758, at * 1 (N.D. Miss. Nov. 5, 2008) (8 days' notice of
deposition not reasonable); United States v. Phillip Morris Inc.,
312 F. Supp. 2d 27 (D.D.C. 2004) (3 business days' notice not
reasonable); In Re: Stratosphere Corporation Securities
Litigation, 183 F.R.D. 684, 687 (D.Nev. 1999) (six days' notice
not reasonable); United States v. Woods, 931 F.Supp. 433, 442 n.
3 (E.D. Va. 1996) (subpoenas served seven days before a hearing
did not provide reasonable time to comply).  Although Rule
45(c)(3)(A)(I) states that the subpoena must be quashed if
reasonable time for a response is not provided, I recommend that
the Court address the merits of Doe's objections since Doe has
had an opportunity to raise his objections.

For similar reasons, this Court also finds that "unusual circumstances" and "good cause" warrant consideration of the motion even though Doe did not object by June 13th.  In determining whether "unusual circumstances" and "good cause" exist, a court should examine whether "(1) 'the subpoena is overbroad on its face and exceeds the bounds of fair discovery'; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena." Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (citations and internal quotation marks omitted).

Doe asserts a significant constitutional interest that casts doubt on the propriety of the information sought, as discussed below, and clearly satisfies the latter two requirements that he has acted in good faith in seeking to resolve this dispute. Indeed, Doe previously engaged counsel in California to contest the legality of subpoenas served April and May 2008 on Yahoo!. Doe's attempt to negotiate an informal settlement with counsel for Prospect could not have commenced prior to the June 13, 2008 deadline in the subpoena for compliance, since Doe apparently first learned of the subpoena in a letter from Cablevision on June 18, 2008.[12]  On June 23, 2008, Doe retained Mr. Koonce, who

---

[12]   Under 47 U.S.C. § 551(c)(2)(B), Cablevision was required to notify Doe of the subpoena if it intended to release his subscriber information to Prospect.  The letter in which Cablevision informed Doe of the subpoena required that Doe
(continued...)

immediately called Mr. Schueller and followed with a letter the next day.  After receiving what he viewed as unfavorable responses from Mr. Schueller, Mr. Koonce filed the instant motion on behalf of Doe to quash the subpoena on July 1, 2008, thirteen (13) days after Doe first received notice of the subpoena.

II.  **Doe's First Amendment Claim**

In seeking to quash the subpoena, Doe contends that disclosure by Cablevision of his identity would violate his First Amendment right to anonymous speech.  As a preliminary matter, this Court notes that because a court order invoked by private litigants constitutes state action, Prospect's attempt to utilize the subpoena power is subject to review by this Court for consideration of the First Amendment concerns raised by Doe.  See Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1091-92 (W.D. Wash. 2001); see also Sony Music Entm't Inc. v. Does 1-40, 323 F. Supp. 2d 556, 563 (S.D.N.Y. 2004).  The Supreme Court has long recognized the right to anonymity as an important component of the various freedoms of speech and association protected by the First Amendment:

> Anonymous pamphlets, leaflets, brochures and even books
> have played an important role in the progress of
> mankind.  Persecuted groups and sects from time to time
> throughout history have been able to criticize
> oppressive practices and laws either anonymously or not
> at all.

----

[12](...continued)
respond to Cablevision by June 24, 2008 if he wanted to prevent disclosure of the information at issue.

Talley v. California, 362 U.S. 60, 64 (1960); Church of Am.
Knights of the Klu Klux Klan v. Kerik, 356 F.3d 197, 208 (2d Cir.
2004) (collecting Supreme Court cases); see also McIntyre v. Ohio
Elections Comm'n, 514 U.S. 334, 341-43, 357 (1995).

    The Court has also extended the protections of the First
Amendment to speech on the internet.  See Reno v. ACLU, 521 U.S.
844, 870-71 (1997).  In fact, the Supreme Court has observed that
the internet provides a unique forum for expression:

> Through the use of chat rooms, any person with a phone
> line can become a town crier with a voice that
> resonates farther than it could from any soapbox.
> Through the use of Web pages, mail exploders and
> newsgroups, the same individual can become a
> pamphleteer.

Id.; see also Elektra Entm't Group, Inc. v. Does 1-9, No. 04 Civ.
2289(RWS), 2004 WL 2095581, at *2 (S.D.N.Y. Sept. 8, 2004); Sony
Music, 326 F. Supp. 2d at 562 (additional citations omitted).

    Courts have also recognized that anonymity is a particularly
important component of speech on the Internet, by "facilitat[ing]
the rich, diverse, and far ranging exchange of ideas."
2TheMart.com Inc., 140 F. Supp. 2d at 1092, 1097; see also
London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 162-63
(D. Mass. 2008) (finding a qualified First Amendment right to
anonymous speech for Internet file-sharing); Best Western
Intern., Inc. v. Doe, No. CV-06-1537, 2006 WL 2091695, at *3 (D.
Ariz. Jul. 25, 2006) (finding unidentified posters of Internet
messages protected by First Amendment right to anonymous speech).
As the court in 2TheMart.com noted, the "ability to speak one's
mind" on the Internet "without the burden of the other party

knowing all the facts about one's identity can foster open communication and open debate."  140 F. Supp. 2d at 1092 (quoting Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578 (N.D. Cal. 1999)).

However, the constitutional right "to speak anonymously, on the internet or otherwise, is not absolute and does not protect speech that otherwise would be unprotected." Doe I, 561 F. Supp. at 254 (citations omitted); Elektra, 2004 WL 2095581, at *3. In some instances, courts have, for example, rejected efforts to prevent disclosure of identifying information on First Amendment grounds when the anonymous individual had allegedly engaged in copyright infringement.  See, e.g., Elektra, 2004 WL 2095581, at *5; Sony Music, 326 F. Supp. 2d at 567.

In determining whether internet users are entitled to First Amendment protections to remain anonymous, courts have generally engaged in a balancing of the rights of the anonymous internet users against the rights of litigants seeking discovery.  Many federal courts have applied the approach of the court in Sony Music Entm't and examined the following five factors: (1) whether the plaintiff has made a prima facie showing of "actionable harm," (2) the specificity of the discovery request, the absence of alternative means to obtain the subpoenaed information, (3) a central need for the subpoenaed information to advance the claim, and (4) the party's expectation of privacy. Sony Music, 236 F. Supp. 2d at 564-65 (citations omitted); see London-Sire Records, 542 F. Supp. 2d at 164 n. 13 (citing cases

-18-

following <u>Sony Music Entm't</u>).  However, some courts have accorded greater protection to anonymous posters by requiring the party seeking discovery (usually the plaintiff) to make an initial showing that his claims are supported "with facts sufficient to defeat a summary judgment motion," rather than the less stringent <u>prima facie</u> proof required in <u>Sony Music</u>.  <u>Doe v. Cahill</u>, 884 A.2d 451 (Del. 2005); <u>Best Western</u>, 2006 WL 2091695, at *4 (following <u>Cahill</u> where the plaintiff sought to subpoena identities of anonymous posters on plaintiff-company's website who it accused of posting confidential material and making false statements about plaintiff).

Irrespective of the standard used to assess the viability of Prospect's claims, I find after weighing the interests of Prospect and Doe that disclosure of Doe's identity is not warranted.  In evaluating the interests involved, this Court adapts the considerations discussed in <u>Sony Music</u> to apply to the circumstances of this case and examines the following factors: (1) the nature of the speech of the anonymous internet  user; (2) the nature and strength of the claims or defenses of the party seeking the discovery; (3) the importance of the identifying information to such claims and defenses; (4) the availability of other sources of information; and (5) the conduct and relationship of the parties and subpoenaed party.

<u>Nature of the Speech</u>

Seizing upon the fact that the postings concerned business issues, Prospect argues that Doe's postings constitute

"commercial speech" and therefore should be afforded lesser protection under the First Amendment.  See Central Hudson Gas & Elec. v. Public Serv. Comm'n, 447 U.S. 557, 562-63 (1980) ("[t]he Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression").  Prospect also appears to argue that because Doe had used multiple user names, he is engaged in false or misleading commercial speech, which is not entitled to protection under the First Amendment.

This court disagrees that Doe's postings fall in the category of "commercial speech."  The "core notion" of commercial speech is that "which does no more than propose a commercial transaction." Anderson v. Treadwell, 294 F.3d 453, 460 (2d Cir. 2002) (quoting Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66 (1983)).  None of Doe's comments described by Prospect amount to an attempt to propose a commercial transaction or constitute some sort of advertising.  Instead, the posts "communicated information, expressed opinion, recited grievances, [and] protested claimed abuses."  See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 365 (1973) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 266 (1963)).

The speech at issue in this case is purely expressive and thus entitled to heightened First Amendment protection.  See e.g., 2TheMart.com, 140 F. Supp. 2d at 1095; Best Western, 2006 WL 2091695, at *4 (finding act of posting messages on the Internet "purely expressive" which is "entitled to substantial

First Amendment protection").  Even if Doe had an "economic motivation" in posting the messages, that "by itself [is] [in]sufficient to convert that speech into 'commercial' speech.'" N.Y. State Ass'n of Realtors, Inc. v. Shaffer, 27 F.3d 834, 840 (2d Cir. 1994) (quoting Bolger, 463 U.S. at 66-67); see Best Western, 2006 WL 2091695, at *4; cf. Boule v. Hutton, 328 F.3d 84, 90-92 (2d Cir. 2003) (in action brought under the Lanham Act, finding critical comments in an art magazine which damaged the plaintiff not commercial speech).

Since Doe's speech is purely expressive and not commercial speech, this Court finds no reason to accord Doe lesser protection under the First Amendment.  In contrast, "speech" in other types of cases involving internet usage, such as the downloading of files or file-sharing, is not purely expressive and therefore is entitled only to 'limited' First Amendment protection."  Sony Music, 326 F. Supp. at 564 (additional citation omitted).  Although not specifically enumerated as a separate factor in Sony Music, this consideration is central to the reasoning of that court in weighing of the First Amendment rights of the litigants in that, and this, case.  There is less risk that disclosure of a file sharer's identity will have a chilling effect on actual expressive activity.

Nature and Strength of Prospect's Claims

Prospect argues that it requires the identity of Doe to engage in a "credibility battle" with former ESA directors, which, if successful, would convince the bankruptcy trustee to

release Prospect from prospective lender liability claims.
Prospect believes that it has thus far been unsuccessful in this
battle because it has been unable to attack the veracity of
negative statements about Prospect allegedly disseminated by
former ESA officers and directors with the assistance and
contrivance of ex-Prospect employees, including Doe.  By
Prospect's own admission, however, its success or failure in the
bankruptcy case may hinge on a variety of factors aside from
whether the trustee agrees to release Prospect from potential
lender liability.  Indeed, it is still an open question whether
Prospect can even reap the benefits of the major asset it
acquired as part of ESA's asset sale -- i.e., the right to pursue
liability claims against ESA's former directors and officers and
so-called "Chapter 5 claims."  <u>See</u> Prospect Opp'n 4 (listing as
one of "three most significant assets," the "litigation rights of
ESA").  As Prospect acknowledges in its memorandum of law:

> The bottom line is that for Prospect to keep the
> Bankruptcy Case alive to preserve the Chapter 5 Claims
> and put in the strongest coverage case for the D&O
> Claims, both the Trustee and the Bankruptcy Court need
> to conclude that a release of lender liability claims
> against Prospect is proper, <u>and</u> that the Chapter 5 and
> D&O Claims [,i.e., potential liability claims against
> ESA] are valid and worth pursuing before the claims are
> even filed.

<u>Id.</u> at 8-9 (emphasis added).

Although Prospect may have shown it has a viable core claim
in the underlying bankruptcy proceeding, its success in the
bankruptcy action is dependent on many issues beyond discerning
Doe's identity and obtaining the trustee's assent to a lender

liability release.  Accordingly, this factor does not weigh in favor of Prospect.

Relevance of the Identifying Information

Even assuming, that the release of Prospect from potential lender liability claims constitutes a core claim or defense with respect to Prospect's position in the bankruptcy proceeding, the Court is hard pressed to see how Doe's identity is material to advancement of its claims.  Much to Prospect's chagrin, it suspects that Doe may be a former employee given the significant knowledge he has of Prospect's inner-workings and his unwillingness to state otherwise in his proposed declaration.  This is an argument it can easily present to the trustee without Doe's identity.

In any event, Prospect is a publicly traded entity and is necessarily the subject of rumors and speculation from a variety of sources.  It appears that there may be other anonymous users who have posted critical messages on the message board or other discussion boards of a similar nature.  Indeed, Doe has proffered in his sworn declaration filed herein that he is not the person making posts under other screen names mentioned by Prospect.  See Doe Decl. ¶¶ 18-22.

Furthermore, and most significantly, there is no evidence that the trustee relied on either the postings or external communications of Doe or any other Yahoo! user in deciding upon liquidation of ESA.  Since Doe is a non-party to the underlying bankruptcy proceeding, that "litigation can go forward without

-23-

the disclosure of [his] identity."  See 2TheMart.com, 140 F.
Supp. 2d at 1095 (noting the necessity of heightened scrutiny
"for disclosing the identity of a non-party witness").

I thus find that Prospect has failed to establish a
sufficiently significant connection between the conduct of Doe,
or any other ex-employee of Prospect, and that of the trustee
such that disclosure of Doe's identity would materially alter
Prospect's negotiating position with the trustee.  It is simply
not enough to say, as Prospect does, that it has a hunch or
suspicion that ex-Prospect employees like Doe were the sources
and catalysts of ESA's alleged smear campaign against Prospect,
to which the trustee was privy.

Accordingly, this factor weighs in favor of quashing the
subpoena.

Availability of information from other sources

Prospect has made an insufficient showing that information
to support its position before the bankruptcy trustee is
unavailable from other sources.  While the record indicates that
Prospect had hired a private investigator to examine ESA's
financial well-being and to interview its former directors and
officers for purposes of the bankruptcy proceeding, there is no
indication that the investigator sought to interview former
Prospect employees, including those Prospect suspects of harming
its image before the trustee.  Moreover, there is no indication
of any effort by Prospect to engage in discovery that may be
available in the bankruptcy proceeding.

In sum, because this court concludes that the relevant factors weigh in favor of quashing the subpoena, I respectfully recommend that Doe's motion to quash the subpoena issued to Cablevision be granted.

## III. <u>Motion for Sanctions</u>

Arguing that Prospect has failed to offer "even the slightest justification for the subpoena," Doe moves under Rule 45 for sanctions in the form of attorneys' fees incurred in contesting the subpoena.  Rule 45(c)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1) (2008).  "The issuing court must enforce this duty by impos[ing] an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply."  <u>Id.</u>  The Court finds sanctions warranted here.

The 1991 Advisory Committee Notes make clear that the provision allowing for Rule 45 sanctions was especially crafted to protect non-parties from abusive subpoenas.  Not only does the Advisory Committee reiterate the potential liability of a subpoenaing party "for earnings lost by a non-party witness as a result of a misuse of the subpoena," it also prompts attorneys to heed their ethical obligations to non-parties, citing Rule 4.4 of the Model Rules of Professional Conduct.  <u>Id.</u>

The Court is troubled by Prospect's conduct in issuing the subpoenas to discover Doe's identity.  Prior to issuing the

subpoena that is the subject of this action, Prospect issued two subpoenas seeking essentially the same information.  Even if Prospect was initially unaware of the objectionable nature of the subpoenas, it would have been alerted to this fact after Doe sought to quash the first set of subpoenas issued to Yahoo! in California.  Rather than litigating Doe's motion to quash the Yahoo! subpoenas to conclusion, Prospect fired off the instant subpoena to Cablevision requiring a response in an unreasonably short period of time and effectively depriving  Doe of the opportunity to raise objections by the response date.

This Court notes that Prospect should not be penalized for the negotiations that took place between counsel for Doe and Prospect regarding the Yahoo! and Cablevision subpoenas which were unsuccessful.  However, Prospect appears to have been rather inflexible in its position.  Doe offered to attest that he never communicated with former ESA officers and directors in connection with the bankruptcy action.  Although this attestation should have addressed Prospect's stated rationale for issuing the subpoenas, Prospect insisted that Doe also attest to the fact that he is not a former or current Prospect employee.  The Court does not see what Prospect has to gain by securing Doe's attestation to this fact other than, perhaps, for future use against Doe and other non-parties.  Cahill, 884 A.2d at 457.  That, if true, strikes at the heart of Doe's First Amendment rights.

By opposing Doe's efforts to quash the subpoena to Cablevision, Prospect required Doe to expend significant time and resources to protect his anonymity.  I find under the circumstances that Prospect has demonstrated a disregard for Rule 45's duty of due diligence and restraint.  This is a basis for imposing sanctions under Rule 45.  See Night Hawk Ltd. v. Briarpatch Ltd., No. 03 Civ. 1382 RWS, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003) ("Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash.") (citing Am. Int'l Life Assurance Co. v. Vazquez, No. 02 Civ. 141, 2003 WL 548736, at *2-3 (S.D.N.Y. Feb. 25, 2003)).

Because I find that Prospect has failed to take reasonable steps to avoid imposing undue burden and expense on Doe, I recommend that the Court grant Doe's request for sanctions and require payment of the attorney's fees incurred by Doe in this proceeding.  I recommend that the Court award a minimum of $2,000 in fees and expenses, for the work expended in this case.  If Doe seeks additional fees, Doe may so indicate and submit counsel's time records and other documentation and information concerning work performed and billing rates which satisfy evidentiary standards in this district for fee applications.

**IV.   <u>Motion to Proceed Under a Pseudonym</u>**

Doe moves to proceed anonymously for the remainder of these proceedings, arguing, understandably, that only with such relief will he be able to fully effectuate the objective of his motion to quash: the preservation of his First Amendment right to anonymous speech.   Prospect objects to Doe's motion on the ground that Doe has failed to establish that disclosure of his identity will put him "at risk of suffering physical or mental injury," which Prospect argues is the "driving factor[]" in determining whether to allow a litigant to proceed anonymously.   Prospect Opp'n 23.   Prospect is incorrect.   In the Second Circuit, courts consider a range of factors in deciding whether a litigant may be granted anonymity, only one of which is the risk of physical or mental harm to the movant.   <u>See</u> <u>Sealed Plaintiff v. Sealed Defendant #1</u>, 537 F.3d 185, 189-90 (2d Cir. 2008) (setting forth a "non-exhaustive list" of ten factors for anonymous plaintiff claims).   However, in light of the recommendation that Doe's motion to quash be granted, the Court sees no reason why Doe cannot continue under a pseudonym in these proceedings at least until the motions filed herein are ultimately resolved.

Accordingly, I recommend that Doe be allowed to proceed under a pseudonym for the sole purpose of resolving his motions raised in this proceeding.

### CONCLUSION

For the reasons stated above, I respectfully recommend that Doe's motions be granted as follows:  (1) that Prospect's subpoena on Cablevision be quashed; (2) that Doe be entitled to recover attorney's fees and costs in litigating this proceeding from Prospect for at least $2,000 or such additional amounts to be determined after submission of appropriate documentation; and (3) that Doe be allowed to proceed anonymously for purposes of litigating the present motion to quash to conclusion.

This report and recommendation will be filed electronically and a copy sent by facsimile to counsel for the respondent on this date.  Any objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Allyne R. Ross and the undersigned, by February 22, 2010.  Failure to file objections within the specified time waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:    Brooklyn, New York
          February 5, 2010

                              _____/s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE